## LONE STAR GAS CO. v. HAIRE et al.
### No. 12473.

Court of Civil Appeals of Texas. Fort Worth.
May 30, 1931.

Marvin H. Brown, of Fort Worth, for appellant.

McLean-Scott & Sayers, of Fort Worth, for appellees.

BUCK, J.

Mrs. Mattie Haire, joined pro forma by her husband, Grady Haire, sued the Lone Star Gas Company, a corporation, and for cause of action alleged that on August 16, 1929, plaintiff was driving and operating a Chevrolet sedan, and at the time complained of was driving the same immediately behind a truck owned and operated by the defendant corporation. That defendant's truck was headed in a westerly direction and plaintiff's automobile was likewise headed in a westerly direction. That both motor vehicles were being operated on a public highway within the confines of the city limits of Fort Worth, said highway running, lying, and extending in an easterly–westerly direction. That defendant's truck was approaching North Fort Worth, and about 500 yards east thereof plaintiff was following said truck and had been following said truck in her automobile for approximately three-quarters of a mile. That previous to said truck arriving at the above-described point, plaintiff had undertaken on numerous occasions to pass the truck and get ahead of it, and each time plaintiff tried to pass said truck she sounded suitable, audible, and proper signal by means of blowing the horn of her car, thereby apprising the driver of said truck of her intention and desire to get ahead. That instead of permitting her to pass, each time she undertook to pass, the truck driver swerved the truck to the left, placing it in front of her car. That as plaintiff approached the point where plaintiff's car was forced from the road, she again sounded her horn as she was overtaking said truck. That upon the sounding of said horn and immediately thereafter, the driver of the truck, who was the agent of the corporation above named, directed and steered the truck to the right of the road, giving ample room to drive ahead and pass said truck to the left of same. That as plaintiff undertook to pass said truck on the proper left-hand side of same, she drove her car until its front end was immediately opposite and just behind the seat of the truck driver, and that both motor vehicles were proceeding in the same direction, and when her car had reached and attained the point just opposite the seat of the

truck driver, the truck driver swerved to the left, thereby forcing and driving plaintiff's car from the highway and into a ditch some 6 or 8 feet deep, causing said car to be demolished and said plaintiff to sustain serious, painful, and permanent injuries.

Plaintiff further alleged that defendant's driver owed her the duty of operating and driving his truck as near the right-hand boundary of said highway as possible, thus allowing her automobile reasonable free passage to the left, and owed her the further duty of giving such assistance as the circumstances reasonably demanded in order to obtain clearance and avoid forcing and driving her car from the highway, and owed her the further duty to give way to the right in favor of her car as said truck was about to be overtaken; and owed her the further duty of keeping, operating, and driving said truck on the right-hand side of said highway as the same was being overtaken and passed.

Plaintiff further alleged that defendant corporation, its servant, agent, and employee, was guilty of negligence and carelessness in one or more of the following particulars, to wit: (a) In failing to yield the road and operate and drive said truck to the right upon audible and proper signal being given by plaintiff; (b) in failing to operate and drive said truck on the right-hand side of the road after it became known to the operator and driver of the truck, or in the exercise of ordinary care should have been known to the operator and driver of said truck, that plaintiff's automobile was in the act of passing said truck; (c) in driving and swerving said truck to the left, thereby forcing plaintiff's car from the highway; (d) in failing to operate and drive said truck as nearly as possible to the right-hand boundary of said highway.

Plaintiff further alleged that all of the above set out acts of negligence and carelessness, both as to acts of omission and commission, jointly and severally, were the direct and proximate cause of the injuries and damages sustained by her.

Plaintiff alleged that as her automobile was driven and forced from the highway, the same dropped some 6 or 8 feet and came in violent contact with a tree which was some 5 or 6 inches in diameter, and so great and violent was the contact of plaintiff's car with said tree that the same was broken. That as said car struck the ground and the tree, the tree was broken and she was thrown forward and her face and mouth came in contact with the steering wheel or some other part of said car; that her body was bruised and her entire nervous system severely shocked. That so great was the bruise to her face and mouth that seven of her teeth were knocked out; that her lower lip was cut and her lower jawbone received such a shock and blow that the teeth and nerves therein were destroyed.

That as a direct consequence plaintiff has been, or will be, compelled to have some six or seven teeth removed. That plaintiff's body was bruised from her head to her feet; that she sustained a severe bruise to her right arm; that she sustained a serious bruise to her lip, causing the same to become black, blue, and swollen; and sustained a severe bruise to her nose, causing the same to swell up; and sustained a slight concussion to her head; that plaintiff, upon the occasion complained of, was riding with her young daughter, for whose safety she greatly feared, as well as her own, and such fact added to the severe shock to her entire nervous system; that plaintiff has been confined to her bed up to the filing of this petition; that she has been disfigured by virtue of the loss of her teeth, and such disfigurement is permanent and humiliating, causing her to suffer not only physical pain, but mental pain and humiliation, shame, and embarrassment; that as a result of the said conduct on the part of the defendant corporation, its servant, agent, and employee, in causing said collision, she will continue to suffer mental and physical pain, shame, and humiliation in the future and during the remainder of her life; that she has been permanently disfigured and cannot control her nerves, cannot sleep at night, and as a result of said negligence has been rendered very nervous and will remain in a highly nervous state for an indefinite period of time. She asked damages in the sum of $15,000.

Defendant filed its answer, consisting of a number of special exceptions, some of which will be hereinafter noted, a plea of contributory negligence on the part of plaintiff, and a plea that defendant's servant was driving its truck on the right-hand side of the public highway and that said public highway was broad enough to give the plaintiff ample room in which to pass and that defendant's driver did not swerve or move the truck at any time toward the center of said highway; that plaintiff in attempting to drive around defendant's truck ran her left wheels into some loose gravel that was laid on the road at said point, and when the left wheels of her car struck the gravel it skidded and she lost control of the same, and the car ran off of the highway. That said accident was not caused by any negligence on the part of defendant's driver.

The trial court submitted the cause to a jury on special issues, and in answer thereto the jury found: (1) That as plaintiff attempted to pass the defendant's truck on August 16, 1929, the driver of said truck swerved the same to the left. (2) That the driver was negligent as that term was defined by the court. (3) That such negligence was the proximate cause of the accident to the plaintiff. (4) That plaintiff gave an audible signal of her intention to pass defendant's truck just prior to attempting to pass the same. (5) That the rate of speed at which the plaintiff was driv-

ing as she attempted to pass the truck was negligence. The court had theretofore instructed the jury that negligence is failure to use ordinary care, and that 20 miles an hour is of itself negligence, and that a speed of 20 miles an hour or less may or may not be negligence, and such driving is to be measured by the definition of negligence as given above. (6) That such negligence, of which the jury found plaintiff was guilty in driving more than 20 miles an hour, was not a proximate cause or a cause which co-operated or concurred with any other cause to bring about the accident to plaintiff. (7) That with reference to the condition of the highway on the left-hand side at the place where the plaintiff attempted to pass defendant's truck, plaintiff was not negligent in attempting to pass defendant's truck. (8) That plaintiff used ordinary care to keep her car under control as she attempted to pass defendant's truck. (9) That the accident did not happen to plaintiff without the negligence of either the plaintiff or the driver of the truck. The jury fixed the damages to which plaintiff was entitled at $2,250.

The court rendered judgment that plaintiff, joined pro forma by her husband, have and recover of and from the defendant, Lone Star Gas Company, the sum of $2,250, with interest thereon at the rate of 6 per cent. per annum from April 28, 1930, together with all costs of court. From this judgment the defendant has appealed.

### Opinion.

■ Defendant excepted to the action of the trial court in overruling its exception to this part of plaintiff's petition: "That previous to said truck arriving at the above described point, plaintiff had undertaken on numerous occasions to pass the said truck and get ahead of it." Defendant excepted because the allegation was improper and indefinite, and was a mere opinion and conclusion of the pleader and does not attempt to set forth the facts relied upon and the same is prejudicial to the rights of defendant and inflammatory in its nature.

We do not believe the court erred in not sustaining this exception. We think the allegations were proper, in order to show that the plaintiff had undertaken to pass the truck at various times before the accident and had given audible and proper signals by means of blowing the horn of the car. Therefore, we overrule the first, second, and third propositions.

■ Under the fourth and fifth propositions, appellant excepts to such allegation as "suitable and proper" signals, because the same constituted mere conclusions and opinions of the pleader and are improper and inflammatory. The statute, article 801 of the Penal Code, subd. D, provides: "It is the duty of the driver, rider, or operator of a vehicle about to be overtaken and passed to give way to the right in favor of the overtaking vehicle on suitable and audible signal, given by or on behalf of the operator, driver or other person in charge and control of such overtaking vehicle, if such overtaking vehicle be a motor vehicle."

We do not see any objection to plaintiff alleging that she gave suitable and audible signal, as these terms are used in the statute, to indicate the character of the signal that must be given by an overtaking vehicle.

Under the seventh proposition appellant assigns error to the action of the trial court in failing to sustain its exceptions to plaintiff's petition, wherein she alleged that when her car reached "a point just opposite and just behind the seat of the truck driver, the truck was swerved to the left, thereby forcing and driving plaintiff and plaintiff's car from the highway and into a ditch some six or eight feet deep."

Appellant urges that the evidence discloses that there was a broad road at the point of the accident, with ample room to pass, and plaintiff was not forced or driven from the highway because of want of space in which to drive. This appears to the court an effort to object to the pleadings of plaintiff alleged here because some of the evidence did not sustain such allegations. Therefore, propositions 7 and 8 are overruled.

■ The ninth and tenth propositions attack the ruling of the trial court in overruling defendant's exceptions to this part of plaintiff's petition: "That upon the occasion complained of she was riding with her young daughter for whose safety she greatly feared, as well as her own, and such fact added to the severe shock to her entire nervous system." Defendant excepted to this proposition because improper, inflammatory, and prejudicial. We do not think the exception is good, and overrule the same.

■ Under the eleventh and twelfth propositions complaint is made of the testimony of David Moses, Jr. He testified that he did not see the accident but when he got to the scene of the accident there was a large truck standing and a bunch of men; that the car in which Mrs. Haire had been riding was in the ditch, off at the south side of the road; that he was driving toward the east. The question was asked him: "On which side of the road was the truck when you got there?" The defendant objected to this testimony because it was irrelevant, immaterial, and inadmissible on any issue in the case. The objection was overruled, and the witness answered: "My recollection is that the truck was on the south side of the road."

It is urged in appellant's brief that the only purpose of this testimony was to prove

that the truck driver was driving the truck on the left-hand side of the road at the time of the accident, and to corroborate plaintiff and her little daughter in their contention that the truck driver swerved the truck to the left. If this was the purpose, we think it admissible, nevertheless. Young Moses was present at the scene of the accident immediately after the car had been driven into the ditch, and we think it perfectly proper for him to testify as to where the truck was at that time. It is true that the presence of the truck on the left-hand side of the road did not prove that it had swerved to the left or had been driven to the left-hand side, but was a circumstance which the jury could consider in determining whether or not the truck driver had swerved his car to the left or had driven on the left-hand side of the road.

Under propositions 13, 15, and 16 it is urged that plaintiff did not in her petition allege that she was compelled to have to use false teeth because of her injuries, nor did she allege that the wearing of false teeth marred her looks or caused her to suffer humiliation. That with the lack of such pleading, the court permitted counsel for plaintiff to ask her: "It is a fact that these teeth—these false teeth, are you aware of the fact that they are false and not your own?" And, "Does the fact that you have that scar and false teeth there, does that cause you to suffer any humiliation?" Defendant objected to this question because leading and suggestive, and no proper predicate had been laid for it as the question is propounded. The court overruled the exception, and the witness answered: "The fact that I have this scar and these teeth does cause me some humiliation."

Plaintiff pleaded that she had been confined to her bed up to the filing of her petition, and that she had been disfigured by the loss of her teeth, and that such disfigurement is permanent and humiliating, causing her to suffer not only physical pain, but mental pain, and humiliation, shame, and embarrassment. Mr. Grady Haire testified: "My wife lost all of her under teeth in this accident. She had seven of her under front teeth, and she had five of them removed. Up to the present time my wife has lost five of her lower teeth and knocked some of the upper teeth out of the plate, and had to have the plate made over again."

Therefore it is shown that she lost five of her front teeth in the accident and she has pleaded that such loss has caused her humiliation and embarrassment. We overrule these propositions.

Counsel for plaintiff asked each of the several witnesses for the defendant if they called a doctor and ever inquired about plaintiff's condition after the accident, or ever went to the hospital to inquire, or ever inquired of her husband as to her condition. In Estes v. Davis, 28 S.W.(2d) 565, 569, the Waco Court of Civil Appeals said: "Appellant complains of the action of the trial court in requiring him to testify over his objection whether he visited appellee after the accident, his answer thereto being that he did not do so. Appellant also complains of the action of the court in permitting appellee's attorney in his closing argument to state to the jury, in substance, that he (appellant) was not interested enough in appellee to even visit him while he was suffering from his injuries, and that, if he (counsel) had injured even a dog belonging to one of the citizens of his town, he would at least evince enough interest to go and see how he was getting along. The accident occurred September 30, 1928. Appellee testified that as a result of his injuries he was confined to his bed for about a week and a half, and that he returned to work in about three weeks. Appellant testified fully with reference to the physical appearance and condition of appellee while he remained at the scene of the accident. We have found no testimony of appellant with reference to his physical condition after that time. The trial was had in May, 1929. We think the testimony complained of was immaterial and irrelevant, and the emphasis placed thereon by such argument improper. Since reversal will be ordered on the grounds above stated, further discussion of these matters is unnecessary."

While Judge Gallagher, Chief Justice of the Waco Court of Civil Appeals, in writing the opinion of Estes v. Davis, cites no authority for the holding of the court in regard to this matter, and we are cited to no other case holding such testimony as inadmissible, yet the writer's high opinion of the judicial learning of the Waco court, and especially that of Judge Gallagher, inclines him to give a listening ear to the holding of the Waco court in this matter. There seems to be no proposition in appellant's brief of any argument by counsel for appellees with reference to this testimony, although the fact that he asked several witnesses for defendant the same questions with reference to whether or not they visited Mrs. Haire during her sickness or inquired about her condition, would indicate some purpose in asking the questions, and that in pursuance he intended to and probably did comment on such failure of the witness to show enough interest in the condition of the plaintiff to at least inquire of her condition. While we are doubtful as to whether such evidence was admissible over objection, yet in view of the other objections raised in subsequent propositions, we will not decide the question, and make no ruling with reference thereto.

The court defined "proximate cause" as follows: "Proximate cause is that cause which in a natural, continuous and unbroken

sequence produces an event, and without which that event would not have been such that a person of ordinary care would have reasonably foreseen that the injury would have occurred. There may be more than one proximate cause."

The defendant objected to this charge in the following words: "The same is an improper. charge in this case and under the record and facts testified to; and said charge is vague and indefinite and confusing and assumes that the jury understands the meaning of a 'natural, continuous and unbroken sequence,' and the charge of the court fails to define such a sequence or to advise the jury what the court means by such a sequence."

In Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570, the court sustained the objection to practically the same charge on proximate cause, and to the failure of the trial court to define the term "new independent cause." It has been held that the failure of the trial court to properly define "actual and exemplary damages" is error. King v. Sassaman (Tex. Civ. App.) 54 S. W. 304. That the term "substantial compliance" should be defined by the court to the jury. Dunlap Hardware Co. v. Elmberg Co. (Tex. Civ. App.) 252 S. W. 1098.

Article 2185, Rev. Civ. Statutes of 1925, reads as follows: "The charge shall be in writing, signed by the judge, filed with the clerk, and shall be a part of the record of the cause. It shall be prepared after the evidence has been concluded and shall be submitted to the respective parties or their attorneys for inspection, and a reasonable time given them in which to examine and present objections thereto, which objections shall in every instance be presented to the court before the charge is read to the jury, and all objections not so made and presented shall be considered as waived. Failure of the court to give reasonable time to the parties or their attorneys for examination of 'the charge shall be reviewable upon appeal upon proper exception. The judge shall so frame his charge as to distinctly separate questions of law from questions of fact, and not therein comment on the weight of the evidence, and so as to instruct the jury as to the law arising on the facts, and shall only submit controverted questions of fact."

Under the above article it has been held that it is the duty of the trial court to define and explain legal terms and expressions. Davis v. Pettitt (Tex. Com. App.) 258 S. W. 1046; N. Texas Traction Co. v. Jenkins (Tex. Civ. App.) 266 S. W. 175; Owens v. Navarro County Ind. School Dist., 115 Tex. 263, 280 S. W. 532; Wichita Falls & S. Ry. Co. v. Hamilton (Tex. Civ. App.) 37 S.W.(2d) 755.

In Hines, Director General of Railroads v. Hodges, 238 S. W. 349, by Chief Justice Conner of this court, writ of error refused, it was held that explanatory instructions as to the law of the case are proper, and in some circumstances necessary, in cases submitted upon special issues, under article 1984a, Vernon's Sayles' Ann. Civ. St. 1914. The majority conclude that the term "continuous and unbroken sequence" is a legal term and a definition thereof should have been given.

■ The court submitted to the jury issue No. 1 as follows: "As the plaintiff attempted to pass the defendant's truck on August 16, 1929, did the driver of said truck swerve the same to the left?" Defendant objected to this issue (1) because the same is not supported by the evidence in the case; (2) because the evidence is insufficient to show that the driver of defendant's truck knew that the plaintiff was attempting to pass the truck at the time that she attempted to pass the same; (3) because the evidence is insufficient to show that the driver of defendant's truck saw the plaintiff while she was attempting to pass said truck and before she lost control of her car and before her car was going off the road and into the ditch; (4) because the issue and charge assumed that the driver of defendant's truck heard the plaintiff give a signal and knew that she was trying to pass the truck; (5) because the issue and charge, as framed, is on the weight of the evidence and leading and suggestive. We will dispose of this proposition with the next.

The court submitted issue No. 2 as follows: "If you have answered No. 1 'no,' do not answer any further questions, but if 'yes,' then answer: Was the driver negligent, as that term is above defined, in swerving the truck to the left, if you have found that he did, as the plaintiff attempted to pass the same?" The defendant objected to the giving of this issue because the evidence was insufficient to support the giving thereof; and because such issue was not supported by the evidence in the case; because the evidence is insufficient to show that the driver of the truck ever saw the plaintiff or knew that the plaintiff was attempting to pass the truck until plaintiff had lost control of her car and was going into the ditch, or that the driver ever heard the plaintiff give any signal before attempting to pass. Plaintiff testified that she had given an audible and proper signal by blowing the horn of her car several times, and that the defendant's driver did swerve to the right just before she had driven alongside the truck and then he again swerved to the left. While the defendant's driver testified that he had not heard a signal given by the plaintiff, we think it was a question for the jury to determine whether or not said driver had heard the signal and knew that plaintiff was attempting to pass. We overrule this proposition, and also the twenty-fifth proposition.

■ The court submitted issue No. 10 to the jury as follows: "Did the plaintiff use

ordinary care to keep her automobile under control as she attempted to pass the defendant's truck?" To which the jury answered, "Yes." Defendant objected to such issue "because the same is not raised by the pleadings in the case." This issue was favorable to defendant, and we see no reason why the court should not have given the same.

Plaintiff testified that she had a speedometer on her car; that the truck was traveling about 20 miles an hour when she tried to pass it; and that she did not know whether she was going faster than that when she tried to go around it or not; that she did not get around.

The jury found in answer to special issue submitted that she was guilty of negligence in running her car as fast as she did while she was attempting to go around the truck, but that such negligence was not the proximate cause of the accident. We think this testimony is sufficient to justify the trial court in submitting the issue and that nothing said in T. & P. Ry. Co. v. Moore, 8 Tex. Civ. App. 289, 27 S. W. 962, by this court, is contrary to our holding.

Appellant insists that the charge of the court permitting recovery "for the injuries sustained by plaintiff in this accident" is erroneous and should not have been given. Plaintiff and her husband both testified to her injuries and to the fact that five of her front teeth were removed as a result of the injuries, and that she was bruised and had a cut on her lower lip, and in fact testified to all the injuries she had pleaded. Therefore, there were no injuries pleaded that were not covered by the testimony and none that was covered by the testimony that she did not plead. Hence, we think there could have been no error in submitting the issue as the court submitted it. Therefore we overrule the twenty-ninth proposition.

Objection is raised to the submission of a charge permitting the jury to find damages for physical pain and suffering. It is urged that the testimony of the doctors does not raise the issue. Mrs. Haire testified that she had a backache a great deal of the time; that her lip was split open and a scar was there. Her husband testified that she was very nervous since the accident and had not been nervous prior to the accident, and that she did not rest as well now as she did before the accident; that she always complains of backache. Dr. F. P. Smith testified that he had examined Mrs. Haire since the accident and that she has a plate of five teeth in the lower jaw; that he noticed that she was very nervous and that he had not noticed such nervousness in his casual entering of the store where she worked and talking to her before the accident. We think there is sufficient evidence to support the issue of permanent injuries.

Under propositions 43, 44, and 46, complaint is made to the answer of the jury to issue No. 8, as follows: "With reference to the condition of the highway on the left hand side at the place where the plaintiff attempted to pass defendant's truck, was the plaintiff negligent in attempting to pass the said defendant's truck?"

The evidence shows that there was some loose gravel at the left-hand edge of the highway about where plaintiff attempted to pass defendant's truck, and there is some testimony by defendant's witnesses that plaintiff's car skidded when she drove into it and tried to go around the truck, and that she swerved her car, lost control, and drove it into the ditch, and was not holding to the steering wheel when she did so. Appellant has cited no authorities under these assignments, and we conclude that the trial court did not err in submitting the issue as given to the jury.

Proposition 49 complains that as the plaintiff sued for personal injuries to herself and was joined pro forma by her husband, and as the judgment recites that plaintiff, joined pro forma by her husband, recover the damages assessed; that Mrs. Haire was not a proper plaintiff to sue for such damages, and cites Yellow Cab & Baggage Co. v. Smith (Tex. Civ. App.) 30 S.W.(2d) 697. In that case the plaintiff sued individually and as guardian of the person and estate of Leroy Smith, a minor, and she was joined pro forma by her husband, the father of the boy. Irrespective of a holding in this case, we think, under the law, damages received by a wife for personal injuries to her constitute community property of the husband and wife. In Teague v. Fairchild (Tex. Com. App.) 15 S.W.(2d) 585, it was held that money received for personal injuries to a wife did not constitute a part of her separate estate, but was community property. The case of Arnold v. Leonard, 114 Tex. 540, 273 S. W. 799, 801, is cited, as also the cases of Koy v. Schneider, 110 Tex. 378, 218 S. W. 479, 221 S. W. 880; Dickson v. Strickland, 114 Tex. 176, 265 S. W. 1012.

In T. C. Ry. Co. v. Burnett et ux., 61 Tex. 638, the Supreme Court held that in a suit for personal injuries to the wife, the husband was the proper plaintiff and that the wife was neither a necessary nor a proper plaintiff. The court reversed and remanded the cause because the trial court overruled the exception directed to the joinder of the wife as one of the plaintiffs in the suit.

Appellee practically concedes that the damages sought to be obtained constituted community property, and urges (1) that Mr. Haire's conduct amounted to an appearance by him in the case; (2) that such conduct constituted a gift by the husband to the wife of the judgment obtained. He cites the fol-

lowing cases: Ames v. Freeman, 83 Kan. 585, 112 P. 160, by the Kansas Supreme Court; Market Street Bank v. Stumpe, 2 Mo. App. 545; S. P. Co. v. Ulmer, 286 S. W. 193, 194, by the Texas Commission of Appeals, approved by the Supreme Court; Teague v. Fairchild, supra, as supporting the contention made by appellees.

In Ames v. Freeman, supra, the court held that where a defendant is served with a void summons issued by a justice of the peace, but at the time named in the summons, appears before the justice of the peace and submits himself to be sworn as a witness by the plaintiff and testifies as to the merits of the case, such conduct amounts to a voluntary appearance, and is binding on the defendant.

In S. P. Co. v. Ulmer, supra, the court held that a judgment awarding the entire recovery to the wife, joined by her husband in the suit for the injuries to her, was final, though the husband was entitled to reimbursement for expenses incurred, under article 4615, Rev. Civ. Stats., 1925. The court said:

"When the court awarded all of such recovery to the wife, it necessarily meant that nothing was thought to be due the husband by the court. After giving it all to the wife, there was no necessity to say that nothing was awarded the husband. There was nothing left for him to recover. * * *

"It may be said that the husband, for his own protection, and for the benefit of the community estate, should have been awarded a part of this recovery under the statute. But, if he was willing to waive his interest in this recovery, it seems to us that such action on his part is no concern of the railway company. * * * Evidently the husband was either willing to give all the recovery to his wife, or he felt that he knew her and could trust her to pay her hospital and doctor bills, and also satisfy her attorneys for recovering the judgment."

In Teague v. Fairchild, supra, quoting from the headnotes, it was held that: "Proceeds of judgment recovered by wife for personal injuries when received constituted part of community estate of husband and wife, but husband having by conduct, in allowing wife to deposit money in bank, clearly evidenced intention to make gift to wife, such action on his part had effect of making fund part of wife's separate estate."

In view of another trial, we conclude that the court improperly adjudged the recovery to the wife, and that the judgment obtained belonged to the community property, and that the husband was a proper plaintiff to prosecute such suit. But, in view of another trial, we think the husband should be made a party plaintiff at interest, and that the wife should either be dismissed, which, under the holding in T. C. Ry. Co. v. Burnett, supra, is proper, or that she should join with her husband in the suit. The writer is inclined to the view, under the circumstances of the case, that the husband would be estopped to sue for damages for the injuries to his wife. But the majority believe this proposition should be sustained.

For the reasons stated, the judgment below is reversed and remanded.