With reference to other complaints of the court's charge, we refer to the opinion delivered in the case of Barnes v. State, 145 Tex.Cr.R. 179, 167 S.W.2d 197, and particularly Paragraph 5 on page 200 thereof.

For the errors pointed out, the judgment of the trial court is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

On State's Motion for Rehearing.

BEAUCHAMP, Judge.

The State has filed a motion for rehearing in which it insists that the testimony of Dr. Long, as an expert, and of the district attorney regarding the transactions before the grand jury should be held to be admissible.

The original opinion logically discusses the testimony of Dr. Long, and we are in accord with the conclusions reached in the original opinion.

The other question is a little confused. However, we think the correct conclusion was reached. The case of Alexander v. State, Tex.Cr.App., 8 S.W.2d 176, is relied upon by the State. We view it as persuasive but certainly not decisive. The statements made to an officer by accused while under arrest were held to be erroneous but did not avail to reverse that case because of the varied surrounding circumstances fully discussed in the opinion. The reasons there stated will not apply in the instant case. Hence we conclude that it does not sustain the State's motion. It will be difficult, if indeed possible, to make

more clear the position of the court than was expressed in the original opinion. We have carefully considered the State's motion and remain of the opinion that the errors pointed out in the original opinion require a reversal of the case.

The State's motion for rehearing is overruled.

BONHAM COCA COLA BOTTLING CO. v. JENNINGS et ux.

No. 13538.

Court of Civil Appeals of Texas. Dallas.

April 28, 1944.

Rehearing Denied May 26, 1944.

Robertson, Leachman, Payne, Gardere & Lancaster and Henry D. Akin, all of Dallas, for appellant.

Webb & Webb, of Sherman, and Gullett & Gullett, of Denison, for appellees.

BOND, Chief Justice.

On October 3, 1936, E. O. Jennings and wife, Nellie Jennings, instituted this suit in a District Court of Grayson County, Texas, against appellant and Sherman Coca Cola Bottling Company, for damages resulting from injuries to Mrs. Jennings in drinking Coca Cola from a bottle alleged to have been processed by the Bottling Companies, contaminated by particles of glass. The injuries she claims to have received were lacerations of her mouth, throat, stomach, intestines and digestive organs, causing severe pain, intense suffering, mental anguish, vomiting, intestinal disorder and hemorrhages, headaches, indigestion, spells of sickness, nervousness, restlessness and sleeplessness, which have continued since the date of the drinking of the Coca Cola in October, 1936.

The trial was to a jury, and at the conclusion of the testimony, the Sherman Coca Cola Bottling Company was peremptorily acquitted, by instructed verdict, of any participation in the bottling and sale of the Coca Cola; and as to the defendant Bonham Coca Cola Bottling Company, the jury found (1) that the Coca Cola sold by defendant "was so contaminated by glass as to be unfit for human consump-

tion"; (2) that the drinking of the Coca Cola was the proximate cause of Mrs. Jennings' illness, and (3) that $1,250 would compensate plaintiffs for her injuries. On the verdict, judgment was entered for plaintiffs against Bonham Coca Cola Bottling Company and in favor of Sherman Coca Cola Bottling Company. The Bonham Company alone appeals.

Appellant assigns error on the action of the trial court in submitting, over appellant's objection, Special Issue No. 1, inquiring whether or not the Coca Cola, at the time it was sold by defendant, "was so contaminated by glass as to be unfit for human consumption"; the point presented being that such issue is duplicitous in that it inquires, first, whether the Coca Cola was contaminated by glass, and, second, whether the Coca Cola was unfit for human consumption. It will be seen from the evidence that two controlling issues were raised—one as to whether, at the time it was sold by defendant, the bottle of Coca Cola contained particles of glass, and the other, as to whether glass taken into the human body by drinking Coca Cola from a bottle, would cause injury.

The issue as stated, "unfit for human consumption," was treated in evidence as "injurious to the human body"; it was not contended that a human could assimilate glass, or that glass is nourishing; it implies "injury" or "injurious" to the body, proximately causing Mrs. Jennings' long illness and physical suffering. Manifestly the burden was upon plaintiffs to show that there was glass in the bottle of Coca Cola and that the glass caused the injuries; both issues are essential and controlling for plaintiffs to recover, and are not other and various phases or different shades of the same issue. They should have been submitted affirmatively as independent grounds of recovery. The two issues were raised by pleading and proof, and failure to sustain either would be fatal to plaintiffs' suit. Mrs. Jennings' testimony, supported by that of her husband, was that particles of glass were present in the bottle when she drank the Coca Cola, that she swallowed some of the pieces, and suffered the pains, discomforts and ill health as alleged in plaintiffs' petition. The defendant offered testimony that the machinery and process of washing and filling Coca Cola bottles at Bonham Bottling Company's plant would not permit

particles of glass to remain in bottles; and the only medical testimony is to the effect that glass is not poisonous and would not be harmful if taken into the human body; Mr. Favors, witness for defendant, after qualifying as familiar with the manner of processing, washing and filling bottles employed at the Bonham Company's plant, testified in response to questions:

"Q. Mr. Favors, this case is one in which the plaintiff alleges there were some small particles of glass about the size or smaller than a blackeyed pea found in the bottle. Will you tell the jury whether or not in your opinion a bottle which goes through this plant that was in use there in 1936 at the Bonham Coca Bottling Company plant, whether or not it would be possible for that bottle to have glass in it at the time it came out? A. The ordinary glass couldn't stay in the bottle subjected to that flushing process that it had to go through.

"Q. You say ordinary glass. Here is a piece of glass they claim was in there. Do you call this ordinary glass? A. Yes sir. Particles of glass like that, it would be impossible for it to stay in there. Only under one condition.

"Q. What would that be? A. That would be that there would be a hunk of tar in there stuck to the bottle and the glass imbedded in the tar."

To the same effect is the testimony of defendant's witness, Brightwell:

"Q. Will you tell the jury whether or not in your opinion, based upon your years of experience in the bottling business and watching the bottling business, whether or not a bottle containing glass could go through the process outlined by you without the glass coming out? A. The glass could not go through the process without coming out unless it was imbedded in some substance that would not be washed from the bottle.

"Q. Such as what? A. Tar, concrete."

Dr. Henschen testified that glass is not poisonous and that no ill effects would result from swallowing glass while drinking Coca Cola, but that if any harm should result to the mouth, throat or intestines, the injury would soon heal and would not be permanent. Another witness, Jack Wilson, by swallowing pieces of the glass which plaintiffs claimed was in the bottle from which Mrs. Jennings drank, demonstrated that it would not injure the body, and testified that it would not harm anyone to swallow it. Much testimony was offered along the line that glass taken internally is not injurious. Such testimony clearly raises the issue as to whether the presence of glass in the Coca Cola involved in this case would render the beverage unfit for human consumption; therefore, the two issues should have been submitted separately, as required by Rule 277, Texas Rules of Civil Procedure. Defendant was entitled to have each group of facts separately presented, free of intermingling. 41 T.J., pp. 1100, 1101; McFaddin v. Hebert, 118 Tex. 314, 15 S.W.2d 213. We think, in the light of the testimony, it could hardly be said that the glass claimed to have been swallowed by Mrs. Jennings, as a matter of law, caused her injuries. It was within the province of the jury to determine the cause of such injuries, if any; so, also, was the issue of whether the Coca Cola was contaminated by glass. In Special Issue No. 2, the inquiry clearly assumes that Mrs. Jennings drank the alleged contaminated beverage and that the drinking of same was the proximate cause of her illness. So, also, in Special Issue No. 3, the assumption is that Mrs. Jennings was injured by drinking the Coca Cola; this issue also seeks to ascertain the amount of money that "will compensate plaintiff for such injuries." The defendant was entitled to have the controlling issues presented separately and separately determined by the jury.

Appellant further assigns error on the award of damages as being excessive. We think, in the light of the testimony, that $1,250 is excessive, but as the cause must be reversed on the state of the charge, as above set forth, we pretermit discussion and the testimony on the issue.

The judgment of the court is reversed and cause remanded.

Reversed and remanded.